LINDSAY (UNITED STATES v.). See Case No. 15,602.

LINDSEY (HARRIS v.). See Cases Nos. 6,-123 and 6,124.

LINDSEY (MILLER v.). See Case No. 9,580.

## Case No. 8,368.

### LINDSEY v. The SOUTH CAROLINA.

[Bee, 173.] [2]

District Court, D. South Carolina. Oct. 27, 1801.

SEAMEN'S WAGES—PART OF CARGO SOLD—CAPTURE.

Ship went to a port out of the course of the voyage stipulated, and there sold part of the car-

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. Thomas Bee, District Judge.]

go. She was afterwards captured. Wages decreed from the time of her leaving Charleston till the partial sale took place.

The actor [Samuel Lindsey] was one of the crew of the South Carolina, and with the rest had signed articles to proceed from Charleston to Leghorn, and back; with liberty to touch at Gibraltar. The vessel sailed from hence about the 1st May, 1800, and put into Malaga, where the captain sold 200 bags of cocoa, part of his cargo, and received on board 23 casks of wine. The ship left Malaga on the 6th July; but on the 15th was taken by a British frigate, and ordered into Port Mahon for adjudication. On her way there, she was recaptured on the 25th by three Spanish, and one French, privateers, and carried into Majorca, where the ship and cargo were condemned. An appeal has been made to the supreme tribunal at Madrid; and the ship and cargo, by the last advices, remained in possession of the mate and cook, the captain being at Madrid for the purpose of prosecuting the appeal. The rest of the seamen left the vessel in February, 1801, having first obtained a certificate from the mate that they were detained by the captain's order to that time.

BEE, District Judge. The only question for my decision is, what wages are due to the actor. This ship and cargo have been condemned at Majorca:

1st. As taken from the possession of an enemy; though this is directly contrary to the treaty between Spain and us. It has been contended that the deviation to Malaga entitled this crew to their wages then due, and even to a discharge. But I do not consider this alteration of the original voyage as sufficient to induce these consequences, whatever might be the case as to an insurance. Besides, nothing of this sort was insisted on at the proper time and place. I shall, indeed, decree wages up to that time, viz. from the 1st May to the 14th July, upon the ground of the captain's having sold part of his cargo at Malaga. It has been said further that the condemnation of this vessel shall not affect the wages of the crew, because she was engaged in an illicit trade. But no such thing appears. The captain and owners are blameless. They knew nothing of the Spanish edict newly proclaimed, and in direct violation of our treaty with Spain, by which it is provided that our property, recaptured by them from an enemy, shall be restored upon payment of salvage.

The second ground of condemnation at Majorca was, that certain of the ship's papers had been thrown overboard. This must have been done, if done at all, by the British captors, for the captain had no inducement to conceal any thing relative to a voyage perfectly fair. If he had seen cause to do an act of this sort, it must have been when he was first taken, in which case the British commander would have been justified in using this as a plea for condemnation. It is nevertheless true that the sentence of a court of competent jurisdiction in Spain will be binding upon these parties, and may ultimately destroy the right of these seamen to the balance of their wages after leaving Malaga. For this I can give no redress; but in consideration of all the circumstances of this case, and that the men never quitted the ship till they were dismissed by the captain, I decree that the actor receive an additional compensation of one month's wages, and that costs of suit be paid by the defendants.

---

LINDSEY (UNITED STATES v.). See Case No. 15,603.

LINDSEY, The ANNIE. See Case No. 422.

LINEGAN (GARRETSON v.). See Case No. 5,251.

LINENS (UNITED STATES v.). See Case No. 15,604.